UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN D. WATSON, | ) |
| | ) CASE NO. C10-73-JCC |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff Susan D. Watson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1957 and was 50 years old at the time of the hearing before the ALJ. (Administrative Record ("AR") 923.) She has a high school education. (AR 188,

REPORT AND RECOMMENDATION
PAGE -1

924.) Her past work experience includes employment as a dishwasher, cashier, and dietary aide. (AR 205-207.)

Plaintiff asserts that she is disabled due to Crohn's disease, a head injury, and arthritis. (AR 449-51.) She asserts an onset date of March 31, 1996. (AR 383.) Because there is a prior, administratively final, unfavorable decision, the relevant period for review in this case is April 29, 1999, one day after the prior decision was issued, through March 30, 2002, plaintiff's date last insured. (AR 122, 124.)

The Commissioner denied plaintiff's claim initially and on reconsideration. (AR 122.) Plaintiff requested a hearing, which took place on March 18, 2008. (AR 918-42.) On June 6, 2008, the ALJ issued a decision finding the plaintiff not disabled. (AR 122-32.) Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council (AR at 8-11), making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On January 12, 2010, plaintiff timely filed the present action challenging the Commissioner's decision. (Dkt. 3.)

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV.   DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date through her date last insured. (AR 124.) At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found the plaintiff had the following medically determinable impairments: pregnancy, obesity, subclinical hypothyroidism, learning disorder, and history of partial seizure disorder. *Id*. However, the ALJ determined that plaintiff did not have a severe impairment or combination of impairments that significantly limited her ability to perform basic work-related activities prior to her date last insured. (AR 124-25.) Having made that finding, the ALJ ended his inquiry. The ALJ concluded plaintiff was not under a disability at any time from March 31, 1996, through March 30, 2002. (AR 131-32.)

Plaintiff argues that the Commissioner (1) erred in finding she had no severe impairments prior to her date last insured; and (2) failed to provide clear and convincing reasons for rejecting her testimony regarding her obesity limitations. (Dkt. 14 at 7-13) She requests remand for an award of benefits, or, alternatively, for further administrative proceedings. *Id*. at 13-14. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. (Dkt. 15.) For the reasons described below, the Court agrees with the plaintiff.

### A.   Step Two Severity Analysis

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs," including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)(quoting Social Security Ruling ("SSR") 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id*.

As indicated above, the ALJ found plaintiff had the following medically determinable impairments: pregnancy, obesity, subclinical hypothyroidism, learning disorder, and history of partial seizure disorder. (AR 124.) However, the ALJ determined that plaintiff's medically determinable impairments did not significantly limit her ability to perform basic work-related activities prior to her date last insured and therefore were not severe. (AR 124-25.)

Plaintiff argues that the ALJ's step two finding "conflicts with the findings of the State agency medical specialists who reviewed Plaintiff's case at the initial and reconsideration levels, which is evidence the ALJ purported to rely upon." (Dkt. 14 at 7.) Specifically, plaintiff argues that the ALJ's finding conflicts with the opinion of the state agency medical specialist Robert Bernardez-Fu, M.D., who determined that plaintiff's pregnancy, obesity, and history of seizure disorder limited her to the light exertional level. (AR 476-83, 647). Plaintiff contends that the fact that Dr. Bernardez-Fu limited her to light work demonstrates her impairments cause more than minimal limitations in functioning and are therefore severe. (Dkt. 14 at 8.) Plaintiff also argues that the ALJ's finding conflicts with the Commissioner's April 28, 2006, decision denying her claim for benefits on reconsideration which stated that plaintiff had "a history of seizure disorder which prevented [her] from performing [sic] hazardess type of work," and that "[t]he evidence shows that [she] did have some lifting limitations which prevented [her] from performing [her] past work." *Id*. (citing AR 366). Again, plaintiff contends that the Commissioner's findings show that her impairments caused more than minimal limitations in functioning and are therefore severe. *Id*. The Commissioner responds that plaintiff failed to carry her burden of proving that her impairments

REPORT AND RECOMMENDATION
PAGE -5

significantly limit her ability to perform basic work activities.  (Dkt. 15 at 7-10.)  The Court disagrees with the Commissioner.

As set forth in the Commissioner's own regulations, a severe impairment or combination of impairments exists when the evidence establishes "more than a minimal effect on an individual's ability to work."  SSR 85-28 (citing 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), 416.921); *see also* SSR 96-3p.  The prevailing view is that only a "slight abnormality" or combination of slight abnormalities that minimally affect an individual's ability to work can be considered non-severe.  *See, e.g., Smolen*, 80 F.3d at 1290.  Thus, the regulatory severity test is quite lenient, and is generally employed only as an administrative convenience designed to screen out totally groundless claims.  *Id*.  An overly stringent interpretation of the severity requirement violates the statutory standard for disability.  *Id*.

Here, the medical evidence shows that plaintiff had an impairment diagnosed as a seizure disorder, partial seizure disorder, and a history of seizures or spells which caused her to fall down, an impairment which is not so slight or minimal that it would not interfere with the plaintiff's ability to perform basic work activities.  (AR 308-11, 558-71.)  As the DDS reviewers found, plaintiff's seizure disorder precludes her from working in and around hazards such as machinery and heights.  (AR 476-83, 366, 647.)  The DDS reviewers also found plaintiff had exertional limitations and could lift no more than 20 pounds occasionally and 10 pounds frequently.  (AR 477, 366, 647.)

In concluding that plaintiff had no severe impairments prior to her date last insured, the ALJ adopted the opinions of the State agency medical consultants.  (AR 130.)  However, as the plaintiff contends, the ALJ's conclusion is contrary to the evidence he purportedly relied

upon. There was in fact medical evidence from Dr. Braun and other providers which showed that plaintiff suffered from spells as often as once or twice a month (although, as plaintiff concedes, not at the frequency she testified to at the hearing). (AR 127, 308-14, 565, 560-71.) The ability to lift and carry only 10 pounds frequently and 20 pounds occasionally coupled with the inability to work in and around hazards, are the same as a significant limitation on one's physical "abilities . . . to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Thus, the medical record includes evidence of problems sufficient to pass the de minimis threshold of step two. Accordingly, the ALJ's decision that plaintiff did not have a severe impairment prior to her date last insured is not supported by substantial evidence and must be reversed.[1]

The Commissioner argues that the medical evidence relied on by the ALJ merely limits plaintiff from performing heavy and medium work, and that "basic work activities" does not mean plaintiff must be able to perform at all exertional levels of work. (Dkt. 15 at 9-10.) However, the fact that plaintiff may be able to perform light work is irrelevant at the step two inquiry. It appears the ALJ may have conflated the step two severity analysis with the step four residual functional capacity analysis. Under the regulations the test is not whether plaintiff can do "most jobs," but rather whether the impairment has significantly limited her abilities to do any one or more of the basic work activities necessary to do most jobs. 20

---

[1] "Credibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions." *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). Here, however, there was sufficient consistency between plaintiff's complaints, though somewhat exaggerated, and her doctor's reports and diagnoses to meet the de minimis standard at step two. *See id.*; *cf. Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005)(finding no disability at step two where the claimant's doctor was hesitant to conclude that any of the claimant's symptoms and complaints were medically legitimate).

C.F.R. §§ 404.1521(b), 416.921(b).

The Commissioner also argues that the plaintiff did not report seizures or further spells after 2001, despite not taking any medications. (Dkt. 15 at 11.) However, as plaintiff argues, the undisputed medical evidence shows that she suffered from seizure spells which caused her to fall between April 1999 and August 2001, and that the ALJ should have considered her seizure disorder a severe impairment for at least a closed period from April 1999 through August 2001. (Dkt. 14 at 9-10.) On remand, the ALJ should reevaluate whether plaintiff's impairment(s) or combination of impairments were severe through her date last insured, and alternatively, whether plaintiff's impairment(s) or combination of impairments were severe during the closed period between April 1999 and August 2001.

Finally, the Commissioner contends that plaintiff voluntarily discontinued her anti-seizure medication in order to get pregnant and did not reinitiate it after having her child. (Dkt. 15 at 11.) The Commissioner argues impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for disability benefits. *Id*. Again, the Court disagrees with the Commissioner. The records show that plaintiff discontinued her anti-seizure medication in May 1999 on the recommendation of her treating physician Frederic Braun, M.D., in order to get pregnant. (AR 565, 570, 571.) Plaintiff subsequently became pregnant and gave birth in April 2000. In June 2000, Dr. Braun expressed doubt over whether plaintiff's continued falling spells were actually seizures and directed her to keep a diary of her spells. (AR 561.) In May 2001, Dr. Braun recommended that plaintiff be seen by a cardiologist, noting plaintiff's spells "sound mainly more cardiovascular than seizures." (AR 559, 560.) In August 2001, cardiologist Stephen A.

Malone, M.D., assessed "'[s]pells, possible syncope," but ordered further testing to rule out a cardiac source. (AR 558.) In November 2001, Dr. Malone noted "he was unable to uncover a cardiac source for Ms. Watson's symptoms." (AR 549.) The record shows that plaintiff did not report symptoms after August 2001. (AR 127, 506.) Thus, contrary to the Commissioner's argument, there is no evidence that plaintiff's impairment would have been adequately controlled by anti-seizure medication (had Dr. Braun prescribed it) because it was unclear whether plaintiff's reported spells were seizures or seizure related. Accordingly, the Commissioner's argument must be rejected.

        1. Obesity

Plaintiff argues that the ALJ erred by finding her obesity to be non-severe at step two. (Dkt. 14 at 11-13.) At the hearing, the plaintiff testified that she weighed 224 pounds, which limited her ability to walk and exercise, and that since 1998, she has been unable to walk more than half a block without resting. (AR 937-40.) The ALJ rejected plaintiff's testimony regarding her obesity related limitations for two reasons. Both of the ALJ's reasons are improper.

If an ALJ finds a claimant's testimony regarding the severity of her impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between her testimony and conduct, daily activities, work record, and the testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of

which she complains.  *Smolen*, 80 F.3d at 1284.

Here, the ALJ rejected plaintiff's testimony because she had failed to lose weight despite her doctor's recommendations.  (AR 127.)  The ALJ stated that "[t]he claimant repeatedly reported her inability to lose weight, but it was noted that she had a history of poor compliance with treatment.  She was encouraged to engage in an increased aerobic exercise program."  (AR 127.)  The ALJ noted that "[i]t is doubtful that the claimant's physician would recommend exercise if she were truly as limited as she alleges."  (AR 130.)

A claimant's failure to follow treatment is not a proper reason to reject a claimant's testimony regarding her obesity.  *See Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007)(*citing* SSR 02-1p; 20 C.F.R. §§ 404.1530, 416.930).  As the Ninth Circuit instructs:

> Before failure to follow treatment for obesity can become an issue in a case, we must first find that the individual is disabled because of obesity or because of obesity and another impairment(s).  Our regulations at 20 CFR 404.1530 and 416.930 provide that, in order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment.  We will rarely use "failure to follow treatment" for obesity to deny or cease benefits.
> . . .
> When a treating source has prescribed treatment for obesity, the treatment must clearly be expected to improve the impairment to the extent that the person will not be disabled. . . . The goals of treatment for obesity are generally modest, and treatment is often ineffective.  Therefore, we will not find failure to follow prescribed treatment unless there is clear evidence that treatment would be successful.

*Id*.

In the instant case, the ALJ did not first find that plaintiff is disabled because of obesity or because of obesity and another impairment.  *See id*.  Furthermore, there is no evidence that Dr. Braun directed plaintiff to lose weight as part of a prescribed treatment, or that the

prescribed treatment would have been successful. *See id*. Rather, it appears that Dr. Braun merely recommended that plaintiff get more exercise. (AR 127, 130, 518.) "A treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment." SSR 02-1p. Thus, the ALJ erred by finding plaintiff not credible due to her failure to lose weight.

The ALJ also rejected plaintiff's testimony because she was able to care for two foster children, a niece sometimes, and her son. (AR 130.) The ALJ noted that the "physical and mental abilities required by caring for infants and young children are inconsistent with an inability to perform all work activity, and render questionable the claimant's allegations of debilitating physical limitations and staying in bed all day." (AR 130.) "'This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility.'" *Orn*, 495 F.3d at 639 (citing *Vertigan v. Halter*, 260 F.3d 1044, 1055 (9th Cir. 2001)). Daily activities may be grounds for an adverse credibility finding *only* "'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Id*. (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Here, there is no evidence that plaintiff was able to spend a "substantial" part of her day engaged in activities that were "transferrable to a work setting." *See Fair*, 885 F.2d at 603. Moreover, as plaintiff contends, the fact that she was able to care for children does not contradict her testimony that she has difficulty walking and is unable to walk more than half a block without resting. (Dkt. 14 at 12 n.1.) Plaintiff's mother's Third Party Function Report further corroborated plaintiff's testimony that she has difficulty walking more than a couple

REPORT AND RECOMMENDATION
PAGE -11

blocks before needing to rest. (AR 409.) Although the ALJ found the report showed plaintiff is "less limited than she alleges, given that she is able to drive a car, shop, prepare simple meals, and care for a young child," (AR 131), the mere fact that plaintiff has carried on certain daily activities such as grocery shopping and driving a car does not detract from her credibility. *See Webb,* 433 F.3d at 688. "One does not need to be 'utterly incapacitated' in order to be disabled." *Id.* (quoting *Vertigan*, 260 F.3d at 1050).

Like other physical impairments, obesity can constitute a severe impairment, either alone or in combination with other medically determinable impairments, when it "significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-01p. Because obesity can cause various functional limitations, ALJs must assess precisely how a claimant's weight affect's their ability to function in the work environment and explain how the obesity limits the claimant's ability to perform work. *Id.* On remand, the ALJ should reevaluate whether plaintiff's obesity alone or in combination with other impairments was severe through her date last insured.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further administrative proceedings consistent with this opinion. A proposed order accompanies this Report and Recommendation.

DATED this 26th day of October, 2010.

Mary Alice Theiler
United States Magistrate Judge